UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIME GREEN LIGHTING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BRILLIANT NEXTGEN INC.,<br><br>Defendant. | Case No.  25-cv-00950-VKD<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 41 |

Plaintiff Lime Green Lighting, LLC ("Lime Green") sues defendant Brilliant NextGen, Inc. ("Brilliant") for infringement of two patents (collectively, "asserted patents"):  U.S. Patent No. 9,699,874 ("the '874 patent") and U.S. Patent No. 10,798,798 ("the '798 patent"), both of which are titled "System, Method, and Apparatus for Self-Adaptive Scheduled Lighting Control." Brilliant moves pursuant to Rule 12(b)(6) to dismiss the operative first amended complaint ("FAC"), arguing that the '874 and '798 patents are invalid because they claim ineligible subject matter under 35 U.S.C. § 101.  Dkt. Nos. 41, 44.  Lime Green opposes the motion.  Dkt. No. 42. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court denies Brilliant's motion to dismiss the FAC, without prejudice.

## I.    BACKGROUND

The '874 patent issued on July 4, 2017, and claims priority to a provisional application filed on September 12, 2014.  *See* '874 patent, cover page.  The '798 patent issued on October 6, 2020 and is a continuation of the '874 patent.  *See* '798 patent, cover page.  The asserted patents' shared specification explains that "[u]ntil recently, the brightness of electric lights was only controlled by electromechanical means" and that "these technologies were designed for, and only

worked well with, traditional incandescent bulbs." *See* '874 patent at 1:23-28.[1] According to the specification, "[r]ecent developments in lighting technology produced many new lighting products incorporating sold-state technology within the bulb," though "the user must still walk across the room and adjust the lights manually." *See* '874 patent at 1:29-31, 38-39. Additionally, the specification explains that "[s]imultaneously, developments in expensive wireless technology have produced so-called 'smart' LED bulbs, which use integral wireless communications to control the output of the LEDs in the bulb by communicating with a wireless computing device, such as a smartphone or a table computer." *See* '874 patent at 1:40-45. While "[t]hese smart bulbs allow the user to remotely change the brightness and/or color of their smart LED bulbs," "[t]he technology cannot be used with conventional bulbs" and "still requires manual intervention by the user when a change is desired, rather than anticipating the user's desire and changing the lighting independently." *See* '874 patent at 1:45-50. The asserted patents purport to address a need "for a new self-adaptive scheduled lighting control[.]" *See* '874 patent at 1:51-53.

The '874 patent contains three independent claims (claims 1, 15, and 20) and seventeen dependent claims. The '798 patent also contains three independent claims (claims 1, 11, and 17) and seventeen dependent claims. For reasons discussed below, the present order focuses on claim 1 of the '874 patent, which recites:

> 1. A lighting control device comprising:
>
> a microcontroller;
>
> a memory operatively connected to the microcontroller, wherein the memory comprises executable instructions;
>
> at least one wireless transceiver operatively connected to the microcontroller;
>
> at least one dimmer operatively connected to the microcontroller;
>
> at least one powered lighting output operatively connected to the at least one dimmer;
>
> at least one environmental sensor operatively connected to the microcontroller;

---

[1] For convenience, the Court cites only to the specification of the '874 patent.

> at least one input device operatively connected to the microcontroller; and
>
> wherein the microcontroller is configured to execute the executable instructions in order to perform a method comprising:
>
>> obtaining environmental data from the at least one environmental sensor;
>>
>> obtaining input data from the at least one input device;
>>
>> transmitting the environmental data and the input data to an external server;
>>
>> obtaining, from the external server, a lighting operating schedule based on the environmental data and the input data; and
>>
>> executing the lighting operating schedule.

'874 patent at 11:39-65.

Lime Green filed its original complaint on January 30, 2025, claiming infringement of only the '874 patent. Dkt. No. 1. Brilliant moved to dismiss the complaint on the grounds that the '874 patent does not claim patentable subject matter and the claims are indefinite mixed system-method claims. *See* Dkt. No. 29. Before Brilliant's motion to dismiss was fully briefed, Lime Green filed the operative FAC, as of right, asserting infringement of "one or more of claims 1-20 of the '874 patent" and "one or more of claims 1-20 of the '798 patent." Dkt. No. 36. Pursuant to the parties' stipulation, Brilliant's motion to dismiss the original complaint was denied as moot. Dkt. Nos. 37, 38. Brilliant then moved to dismiss the FAC, arguing that the '874 and '798 patents claim ineligible subject matter under 35 U.S.C. § 101.[2]

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

---

[2] Although Lime Green includes arguments regarding indefiniteness in its opposition (*see* Dkt. No. 42 at 12), Brilliant appears to have dropped the indefinite/mixed system-method argument that Brilliant previously asserted in its original motion to dismiss (*see* Dkt. No. 41 at 5). As the Court denies Brilliant's present motion to dismiss in any event, this order does not address Lime Green's indefiniteness arguments.

3

United States District Court
Northern District of California

Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

A complaint should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does the Court accept allegations that contradict documents attached to the complaint or incorporated by reference, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014), or that rest on "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

A contention that a patent claims ineligible subject matter is an affirmative defense. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1289 (Fed. Cir. 2024). "[A] complaint may be dismissed based on an affirmative defense that 'clearly appears on the face of the pleading.'" *Id.* (quoting *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022)).

### B.    Patent Eligibility Under 35 U.S.C. § 101

"Eligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts," *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018), "[b]ut not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry," *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023) (quotation modified and citation omitted). "Like other legal questions based on underlying facts, [eligibility

4

under § 101] may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc.*, 898 F.3d at 1166 (citations omitted).

The Patent Act provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof[.]" 35 U.S.C. § 101. However, patent protection does not extend to claims that monopolize the "basic tools of scientific and technological work," and it is well settled that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quotation modified; citations omitted). Courts must nonetheless "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id*. at 217. "At some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id*. (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)). "Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Id*.

Under the two-step framework described in *Alice*, the Court must first determine whether the claim at issue is "directed to a patent-ineligible concept." *Id.* at 218. If so, then at step two, the Court must "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 221 (quoting *Mayo Collaborative Servs.*, 566 U.S. at 72-73). Specifically, the Court must determine "whether the claim elements, individually and as an ordered combination, contain an inventive concept, which is more than merely implementing an abstract idea using well-understood, routine, and conventional activities previously known to the industry." *Chewy, Inc. v. Int'l Bus. Machines Corp*., 94 F.4th 1354, 1365 (Fed. Cir. 2024) (quotation modified; citation omitted).

## III.    DISCUSSION

### A.    Representative Claims

The parties initially agreed that, for purposes of evaluating Brilliant's § 101 arguments,

claim 1 of the '874 patent is representative of all claims in both the '874 patent and the '798 patent. In its opening motion, Brilliant argued that claim 1 of the '874 patent is representative of independent claims 15 and 20, as well as all seventeen dependent claims in that patent, and that claim 1 of the '798 patent is representative of independent claims 11 and 17, as well as all seventeen dependent claims in that patent. *See* Dkt. No. 41 at13-16.[3] In its opposition, Lime Green not only agreed with Brilliant's arguments regarding the representative nature of claim 1 of the '874 patent, but it also expressly stated (twice) in its papers that claim 1 of the '874 patent *alone* is representative of *all* claims at issue, and that "[t]he arguments presented herein regarding the claims of the '874 patent apply mutatis mutandis to the claims of the '798 patent." Dkt. No. 42 at 5; *id*. at 8 ("Claim 1 of the '874 patent is representative of the claims of the patents-in-suit with respect to the issues raised by Defendant. The arguments presented herein regarding the claims of the '874 patent apply mutatis mutandis to the claims of the '798 patent."). Lime Green thus agreed that the § 101 analysis is properly limited to only claim 1 of the '874 patent. It was with that understanding and on that basis that Brilliant (and the Court) proceeded. *See* Dkt. No. 44 at 2; *see also* Dkt. No. 52.

However, at the motion hearing (months after briefing on the present motion closed), Lime Green attempted to retract its prior agreement regarding the representative nature of claim 1 of the '874 patent, as well as its express assertion that claim 1 of the '874 patent is representative of all claims in both asserted patents. *See* Dkt. No. 52. Brilliant argued that Lime Green's retraction was untimely and that Lime Green waived its ability to challenge the representative nature of claim 1 of the '874 patent or to argue that dependent claims are separately patent eligible.

"Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citations omitted). "The patent challenger who identifies a claim as representative of a group of claims bears the initial burden to

---

[3] All pin citations to the parties' briefing refer to the page numbers that appear in the ECF header of filed documents.

make a prima facie showing that the group of claims are substantially similar and linked to the same ineligible concept." *Mobile Acuity,* 110 F.4th at 1290 (quotation modified; citations omitted). "Once this occurs, the burden shifts to the patent owner to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group." *Id.* "The patent owner may, for example, articulate why a claim limitation not found in the representative claim has 'distinctive significance' that would have a material impact on the eligibility analysis." *Id.* (quoting *Berkheimer*, 881 F.3d at 1365). "If the patent owner fails to meet its obligation to make non-frivolous arguments in opposition to the representative claim contention, it forfeits its right to argue that the claims in the group identified by the movant are patent eligible even if the representative claim is ultimately found to be ineligible." *Id.*

Here, Lime Green not only agreed with Brilliant regarding the representative nature of claim 1 of the '874 patent, Lime Green affirmatively stated that claim 1 of the '874 patent is representative of all claims in both the '874 patent and the '798 patent. Even so, the Court is not persuaded that Brilliant has met its burden to establish a prima facie case regarding the representative nature of the patent claims, *see Mobile Acuity,* 110 F.4th at 1290, particularly with respect to the dependent patent claims, which received little more than a one-line treatment in Brilliant's motion. *See* Dkt. No. 41 at 14. The asserted patents on their face indicate that the dependent claims contain additional details that are not found in claim 1 of the '874 patent.

Nevertheless, Lime Green's attempt, months later at the motion hearing, to challenge the representative nature of claim 1 of the '874 patent was untimely and therefore waived, at least for purposes of addressing Brilliant's present § 101 motion. Lime Green argued at the motion hearing that the dependent claims provide additional details to what is recited in claim 1 of the '874 patent, and pointed out that its opposition also includes a (one-line) argument to that effect. *See* Dkt. No. 42 at 9 ("The dependent claims add further details."); *see also* Dkt. No. 52. However, Lime Green's arguments are conclusory, undeveloped, and fall far short of "articulat[ing] why a claim limitation not found in the representative claim has 'distinctive significance' that would have a material impact on the eligibility analysis." *Mobile Acuity*, 110 F.4th at 1290 (quoting

United States District Court
Northern District of California

7

*Berkheimer*, 881 F.3d at 1365).

Accordingly, the Court will analyze only claim 1 of the '874 patent in resolving the present motion to dismiss.  For the reasons discussed below, Brilliant has not shown, at least at this time, that at step one of the § 101 analysis, claim 1 of the '874 patent is directed to an abstract idea.

### B.      *Alice* Step One

At step one of the § 101 analysis, courts "evaluate the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Trinity Info Media*, 72 F.4th at 1361 (quotation modified; citations omitted); *see also Alice*, 573 U.S. at 217.  In making that assessment, courts "look to whether the claims focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *PowerBlock Holdings, Inc. v. iFit, Inc.*, 146 F.4th 1366, 1371 (Fed. Cir. 2025) (quotation modified; citations omitted).  "While the § 101 inquiry must focus on the language of the asserted claims themselves, the claim itself need not explicitly recite the improvement." *U.S. Patent No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373, 1378 (Fed. Cir. 2026) (quotation modified; citation omitted).  "Rather, [Federal Circuit] precedent supports a variety of analytical approaches," such as "(1) looking to the written description to understand the problem facing the inventor and what the patent describes as the invention; (2) considering whether any technological improvement is embodied in the claims; and (3) analyzing whether the claims and written description describe how [the] improvement was accomplished." *Id*. (quotation modified; citations omitted).  Additionally, "[i]n determining what the claims are directed to and whether they are directed to an abstract idea, a court may well consult the plain claim language, written description, and prosecution history and, from these sources, conclude that the claims are directed to automating a longstanding or fundamental practice." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372-73 (Fed. Cir. 2020).

Brilliant argues that the purported invention of claim 1 of the '874 patent is directed to "the abstract idea of a 'self-adaptive scheduled lighting control.'" Dkt. No. 41 at 13 (quoting '874 patent at 1:51-52); *see also id*. at 17.  In its opposition, Lime Green responds that the '874 patent

"relates to novel and improved lighting control systems and apparatuses that provide a solution to a prior art technological problem of requiring manual control of such systems and apparatuses." Dkt. No. 42 at 5. When questioned by the Court at the motion hearing, Lime Green described the relevant technology as a "lighting control device" that aims to automate processes that previously were performed manually and also make them "self-adaptive." *See* Dkt. No. 52.

Neither Lime Green nor Brilliant has adequately described the relevant technology or captured the character of claim 1 of the '874 patent as a whole. *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1011 (Fed. Cir. 2018) (*Alice* step one "inquiry requires that the claims be read as a whole."). Each party has presented their respective arguments at a high level and with some amount of generality and/or ambiguity. For example, both parties cite the term "self-adaptive" as a basis to argue that the purported invention either is, or is not, abstract. However, it is unclear what "self-adaptive" means, and neither party has addressed that issue. While the term "self-adaptive" appears in the title of the asserted patents, that term is not used at all in the patent claims, and it appears only twice in the specification. *See* '874 patent at 1:17-19 ("This disclosure is directed to lighting control devices. More specifically, this disclosure is directed to self-adaptive scheduled lighting control devices."); *see id*. at 1:50-53 ("Accordingly, a need exists for a new self-adaptive scheduled lighting control aimed at overcoming the limitations associated with the prior art solutions."). "An ineligibility analysis depends on the language of the claims themselves," and requires a "proper understanding of what is claimed." *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1061 (Fed. Cir. 2026) (quotation modified; citations omitted). In short, neither party has adequately explained what it believes the claimed invention is "directed to."

Nonetheless, as neither Lime Green nor Brilliant suggests that claim construction is necessary to resolve the present § 101 motion, the Court proceeds with its analysis. Looking first to the language of claim 1 of the '874 patent, the claim discloses a "lighting control device," and its constituent parts, namely "a microcontroller," "a memory," "at least one wireless transceiver," "at least one dimmer," "at least one powered lighting output," "at least one environmental sensor," and "at least one input device." *See* '874 patent at 11:30-52. The microcontroller is "configured to

execute" instructions to perform the following method steps: "obtaining environmental data from the at least one environmental sensor," "obtaining input data from the at least one input device," "transmitting the environmental data and the input data to an external server," and "obtaining from the external server, a lighting operating schedule based on the environmental data and the input data," and "executing the lighting operating schedule." *See id*. at 11:54-65. The specification indicates that the claimed invention purports to provide a system, method, and device for controlling lighting systems that include both conventional bulbs and smart bulbs, without manual intervention—i.e., without having to manually adjust a dimmer (for conventional bulbs), or without requiring a user to manually make a change (for smart bulbs). *See* '874 patent at 1:57-2:47 & col. 5. It is unclear whether certain claim terms—such as, "obtaining . . . a lighting operating schedule based on"—may ultimately require construction before the scope of the claim can be understood, but, as noted above, neither party offers any proposed constructions.[4] In any event, having considered the record as presented, the Court concludes that claim 1 of the '874 patent is directed to an improvement to "lighting control" technology—namely, a system or device that controls lighting based on environmental data, input data, and a pre-defined schedule "anticipating the user's desire and changing the lighting independently." *See* '874 patent at 1:45-52.

Brilliant's arguments carry some persuasive force insofar as Brilliant contends that claim 1 of the '874 patent is directed to an abstract idea because the method steps following the "wherein" clause of claim 1 are expressed in functional terms (e.g., reciting steps for "obtaining" data, "transmitting" data, "obtaining" a schedule, and "executing" the schedule). *See* Dkt. No. 41 at 18. Indeed, the Federal Circuit has "often recognized" that "claims directed to the steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality" and those "using purely result-focused functional language, containing no specificity about how the purported invention achieves those results, to be directed to an abstract idea." *GoTV*, 166 F.4th at 1064 (quotation modified; citations omitted).

---

[4] The Court has examined the FAC and its attachments but finds no meaningful discussion of the claim language. *See* Dkt. No. 36.

United States District Court
Northern District of California

Nevertheless, inasmuch as Brilliant's arguments focus primarily on the use of known components and the purported automation of functions that otherwise would be manually performed, Brilliant misses the mark. Brilliant contends that claim 1 of the '874 patent is directed to an abstract idea because the claim merely discloses known components (e.g., sensor, microcontroller, memory, computer, input devices, and smart bulbs) to automate processes (i.e., scheduling or controlling lighting devices) that previously were performed manually, without improving the operation of those components. *See* Dkt. No. 41 at 6, 17-19. Lime Green responds that Brilliant oversimplies the claimed invention. Lime Green argues that Brilliant's "cited cases are distinguishable" because "the claims of the patent-in-suit are directed to tools for solving a prior art technological problem automatically executing a lighting schedule based on environmental data collected using environmental sensors." Dkt. No. 42 at 13. "A claim is not *directed to* an abstract idea simply because it uses conventional technology." *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 F. App'x 534, 537 (Fed. Cir. 2021) (emphasis added); *see also Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1380 (Fed. Cir. 2024) ("GoPro contends that the claims simply employ known or conventional components that existed in the prior art at the time of the invention. Even so, that *alone* does not necessarily mean that the claim is *directed to* an abstract idea at step one.") (citations omitted). In determining whether claim 1 of the '874 patent is directed to an abstract idea, the Court cannot simply read out conventional elements or other elements that may be found in the prior art. Rather, the Court must consider claim 1 of the '874 patent in its entirety. *See Data Engine,* 906 F.3d at 1011 (citing *Alice*, 573 U.S. at 218 n.3).

Nor is the Court persuaded by Brilliant's contention that the benefits of the claimed invention(s) are merely those derived from doing things on a computer that would otherwise need to be done by hand. While Lime Green acknowledges that the claimed invention includes conventional computer components, Lime Green does not claim that the patents are directed to an improvement in *computer technology*. *See, e.g.*, Dkt. No. 42 at 9-10, 13. Indeed, Brilliant acknowledges that the asserted patents purport to do more than merely use a computer to automate manually performed processes. *See* Dkt. No. 41 at 16-17 ("The Asserted Patents identify two specific deficiencies in the background of the invention of then existing technology," including

11

United States District Court
Northern District of California

manual adjustment of lighting and "'anticipating the user's desire and changing the lighting independently.'") (quoting '874 patent at 1:48-50).  As discussed above, claim 1 of the '874 patent and the written description indicate that the purported invention is directed, more particularly, to achieving an improvement in *lighting control technology*.  Accordingly, the cases Brilliant cites, which generally concern use of computers as a tool to collect and analyze data for some purpose other than improving computer functionality, fail to persuade, at least on this record, that claim 1 of the '874 patent is directed to an abstract idea.  *See, e.g., Cascades Branding Innovation LLC v. Aldi, Inc.*, No. 2024-1729, 2025 WL 2731321, at *2-*3 (Fed. Cir. Sept. 25, 2025) (patent directed to collecting and displaying geographic information without focus on inventive technology for performing functions is abstract); *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1216 (Fed. Cir. 2025) (patents directed to generation of event schedules and network maps found ineligible where the patents "do no more than claim the application of generic machine learning to new data environments, without disclosing improvements to the machine learning models to be applied . . ."); *Weple IP Holdings LLC v. Meta Platforms, Inc*., No. 24-cv-1316 JLR, 2025 WL 1194056, at *4-*5 (W.D. Wash. Apr. 24, 2025) (patent directed to abstract idea of "receiving, storing, scheduling, selecting, and presenting media content and advertisements" using result-based functional language that does not describe how to achieve results in a non-abstract way); *DriverDo, LLC v. Social Auto Transport, Inc*., 787 F. Supp. 3d 153, 179 (E.D. Va. 2024) (patents are "directed to the abstract idea of 'scheduling a trip . . . to transport vehicles from a pick-up location to a drop-off location,' possibly including an intermediate task or tasks along the way' and uses 'purely functional language' and 'conventional technology' to solve non-computer problems related to inefficiencies in existing vehicle transportation systems."); *P&RO Sols. Grp., Inc. v. CiM Maintenance, Inc*., 273 F. Supp. 3d 699, 708 (E.D. Tex. 2017) (patent directed to "the abstract idea of scheduling business activities using a computer and computer network.").  While claim 1 of the '874 patent does use functional language, the Court is not persuaded that the claimed method steps are described in entirely functional, result-oriented terms, as Brilliant contends, and the parties have collectively failed to address in any meaningful way the portions of

the written description that might inform the Court's consideration of this issue.[5]  *See, e.g., Contour IP Holding*, 113 F.4th at 1376-77, 1380 (finding claim directed in part to "a camera processor configured to" perform multiple steps not abstract where the "written description discloses improving POV camera technology through specific means").

For these reasons, the Court finds that, at this time, Brilliant has not shown that claim 1 of the '874 patent, when considered as a whole and in light of the specification, is directed to an abstract idea.  Accordingly, the Court denies Brilliant's motion to dismiss, without prejudice, and does not proceed to *Alice* step two.  *See Contour IP Holding*, 113 F.4th at 1379 ("If the claims are not directed to an abstract idea, the *Alice* inquiry ends.") (citing *Alice*, 573 U.S. at 217).

## IV.    CONCLUSION

Based on the foregoing, Brilliant's motion to dismiss the FAC based on patent ineligibility under 35 U.S.C. § 101 is denied, without prejudice to Brilliant's ability to challenge the subject matter eligibility of the asserted patent claims at a later stage in the case, if appropriate.

The parties previously agreed to stay discovery, which was stayed through the date of the hearing on Brilliant's motion to dismiss.  *See* Dkt. No. 31; *see also* Dkt. No. 34, 38.  The parties also agreed to participate in court-sponsored mediation, and the Court stated that it would issue an order to that effect after Brilliant's motion to dismiss was heard.  Dkt. No. 31.  By **April 9, 2026**, the parties shall confer and file a joint status report proposing a schedule that complies with requirements of this District's Patent Local Rules.  Upon receipt of the parties' report, the Court will decide whether a further case management conference is necessary and so advise the parties.

**IT IS SO ORDERED.**

Dated: March 25, 2026

Virginia K. DeMarchi
United States Magistrate Judge

---

[5] For example, Brilliant does not address at all the portion of the specification that discusses in some detail Figures 3-6 of the '874 patent, which appear to describe the "method steps" portion of claim 1, *see* '874 patent at 6:53-9:6, and Lime Green merely summarizes that portion of the specification in conclusory fashion.  *See* Dkt. No. 41 at 8-10, 18; Dkt. No. 42 at 11.

13